IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. _____ CIV-

| | | |
|---|---|---|
| STEPHEN SENECA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JBI, INC., f/k/a 310 HOLDINGS, INC., a) | | **COMPLAINT** |
| Nevada corporation; JOHN BORDYNUIK, an) | | |
| individual; DOES I-X, inclusive; and ROE) | | |
| CORPORATIONS I-X, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, STEPHEN SENECA, by and through his undersigned attorneys, sues defendants, JBI, INC., f/k/a 310 HOLDINGS, INC., JOHN BORDYNUIK, DOES I-X AND ROE CORPORATIONS I-X, and alleges as follows:

## JURISDICTION AND VENUE

1.      Plaintiff, STEPHEN SENECA (hereinafter referred to as "Seneca"), is, and at all times relevant hereto was, an individual domiciled and residing in the State of Florida.

2.      Defendant, JBI, INC., f/k/a 310 HOLDINGS, INC. (hereinafter referred to as "JBI"), is a Nevada corporation that is publicly owned and whose stock trades in the secondary market on a public exchange.  As hereinafter alleged, JBI has submitted itself to the jurisdiction of this state by: a) operating, conducting, engaging in or carrying on a

business in the State of Florida or by having an agency in this state, both directly and through its wholly-owned subsidiary, Pak-It, LLC, a Florida Limited Liability Company; b) committing tortious acts within the State of Florida directed at Seneca while he was a Florida resident and/or c) breaching a contract in the State of Florida by failing to perform acts required by the contract to performed in this state. Based on the above facts, JBI should reasonably anticipate being hauled into a Florida court, and this Court's adjudication of Seneca's claims against JBI comports with notions of fair play and substantial justice.

3.      Defendant, JOHN BORDYNUIK (hereinafter referred to as "Bordynuik"), is an individual domiciled and residing in Ontario, Canada, who at all times relevant hereto was JBI's President and Chief Executive Officer.   As hereinafter alleged, Bordynuik has submitted himself to the jurisdiction of this state by: a) operating, conducting, engaging in or carrying on a business in the State of Florida or by having an agency in this state; and/or b) committing tortious acts within the State of Florida directed at Seneca while he was a Florida resident. Based on the above facts, Bordynuik should reasonably anticipate being hauled into a Florida court, and this Court's adjudication of Seneca's claims against Bordynuik comports with notions of fair play and substantial justice.

4.      Defendants designated as DOES I through X and ROE CORPORATIONS I through X are unknown to Plaintiff, who therefore sues these Defendants by their fictitious names.

5.      This is an action for damages in excess of $75,000.00, exclusive of interest, costs, and attorney's fees.

6.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between Plaintiff, a Florida resident, and Defendants, Nevada and Canada residents, respectively, and a claim for damages in excess of $75,000.00.

7.     Venue is proper in this Court because the underlying causes of action arise from breach of a Florida contract.  The tortious acts at issue occurred as a result of Defendants conducting business in the State of Florida and based on those tortious acts, Defendants should reasonably anticipate being hauled into a Florida court.  Furthermore, Defendants, as foreign persons and entities, have no venue privilege.

8.     All conditions precedent to the maintenance of this action have been performed, have occurred, or have been waived.

## FACTUAL ALLEGATIONS

9.     On or about September 30, 2009, JBI (then known as 310 Holdings, Inc.) and Bordynuik entered into a Unit Purchase and Exchange Agreement (hereinafter referred to as the "Agreement") with Pak-It, LLC, and the selling unitholders of Pak-It, LLC.  A copy of the Agreement is attached hereto as Exhibit No. 1.  Pursuant to the Agreement, JBI was to acquire 100% of the issued and outstanding membership units of Pak-It, in exchange for the issuance by JBI of an aggregate of 625,000 shares of common stock of JBI to the Pak-It Unitholders.  As a result, Pak-It would become a wholly owned subsidiary of JBI.

10.    Seneca was the holder of 24.25% of the membership units of Pak-It.  As a result of the Agreement, Seneca received 151,563 shares of common stock of 310 Holdings, Inc. (now JBI).

11.     Subsequently, on or about February 3, 2010, Seneca acquired an additional 137,500 shares of stock in JBI. This gave Seneca a total of 298,063 shares of common JBI stock (hereinafter collectively referred to as the "Shares"). A true and correct copy of the stock certificates is attached hereto as Exhibit No. 2.

12.     The stock certificates bore a restrictive legend which prevented Seneca from selling them in the public market unless the Shares qualified for an exemption from registration such as the exemption provided by Securities Exchange commission ("SEC") Rule 144, 17 C.F.R. §230.11 ("Rule 144") and the restrictions and legend were removed from the Shares pursuant to the standards and requirements set forth in Rule 144.

13.     Specifically, the restrictive legend on the Shares read as follows:

THE SECURITES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 AS AMENDED, OR APPLICABLE STATE SECURITIES LAWS. THE SECURITIES HAVE BEEN ACQUIRED FOR INVESTMENT AND NOT WITH A VIEW TOWARD RESALE AND MAY NOT BE OFFERED FOR SALE, SOLD, TRANSFERRED OR ASSIGNED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT FOR THE SECURITIES UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR APPLICABLE STATE SECURITIES LAWS, UNLESS THE COMPANY HAS RECEIVED AN OPINION OF COUNSEL WHICH IS SATISFACTORY TO THE COMPANY, TO THE EFFECT THAT SUCH REGISTRATIONS ARE NOT REQUIRED.

14.     At all times relevant hereto, Pacific Stock Transfer Company (hereinafter referred to as "Pacific") was JBI's transfer agent in charge of recording transfers of stock in JBI and canceling certificates representing shares of JBI stock with a restrictive legend and reissuing replacement certificates for such shares without restricted legends (i.e., removing the legend from shares) pursuant to Rule 144 or otherwise.

15. Pursuant to the express requirements set forth in the restrictive legend, and as is otherwise standard in the industry, Pacific would not remove the restrictive legend from the Shares without first receiving an opinion letter approved by JBI stating that all of Rule 144's requirements for removal of the restrictive legend were satisfied.

16. Based upon the restriction, JBI had the equivalent of veto power over the removal of the restrictive legend from the Shares because Pacific would not remove the legend without explicit instructions and authorizations from JBI.

17. When Seneca requested that JBI have an opinion letter issued to remove the restrictive legend in May of 2010, he was informed by JBI's attorney that the legend could not be removed because the company was a shell company and that he would have to wait until August of 2010 to have the restriction lifted.

18. However, on March 31, 2009, JBI's predecessor, 310 Holdings, Inc. (now JBI), filed a Form 10-K with the SEC, a true and correct copy of which is attached hereto as Exhibit No. 3.

19. Under the heading of "Item 1A. Risk Factors," JBI's 3/31/09 10-K states as follows:

WE WERE A "SHELL" COMPANY AND OUR SHARES ARE SUBJECT TO RESTRICTIONS ON RESALE

Although we are no longer deemed a "shell company" as defined in Rule 12b-2 of the Securities Exchange Act of 1934, for the twelve months following this filing, shareholders holding restricted, non-registered shares will not be able to use the exemptions provided under Rule 144 for the resale of their shares of common stock. Preclusion from any prospective investor using the exemption provided by Rule 144 may be more difficult for us to sell equity securities or equity-related securities in the future to investors that require a shorter period before liquidity or may require us to expend limited funds to register their shares for resale in a future prospectus.

20. The SEC's instructions for completion of Form 10 pursuant to 17 CFR 249.210 contain the identical requirement as the SEC's instructions for Form 10-K regarding the reporting of "Risk Factors" like the one quoted above from JBI's 3/31/09 10-K:

> Set forth, under the caption "Risk Factors," where appropriate, the risk factors described in Item 503(c) of Regulation S-K (§229.503(c) of this chapter) applicable to the registrant. Provide any discussion of risk factors in plain English in accordance with Rule 421(d) of the Securities Act of 1933 (§230.421(d) of this chapter). Smaller reporting companies are not required to provide the information required by this item.

True and correct copies of the SEC's instructions for completing Forms 10 and 10-K are attached hereto as Exhibit No. 4.

21. The above-quoted "Risk Factor" set forth in JBI's 3/31/09 10-K constitutes "Form 10 Information" reporting that JBI is no longer a shell company for purposes of Rule 144(i)(2), as defined in Rule 144(i)(3).

22. On or about May 20, 2009, JBI's predecessor, 310 Holdings, Inc. (now JBI), filed a Form 10-Q with the SEC, which publicly reported 310 Holding, Inc.'s status and operations as of the quarter ending March 31, 2009. A true and correct copy of 310 Holdings, Inc.'s 5/20/09 10-Q filed with the SEC is attached hereto as Exhibit No. 5.

23. Under the heading "ITEM 1A – Risk Factors," JBI's 5/20/09 10-Q expressly refers to the risk factors disclosed in JBI's 3/31/09 10-K, states that there has been no material change in them, and instructs investors that they should continue to consider them:

> There have been no material changes in the risk factors previously disclosed in our Annual Report on Form 10-K for the fiscal year ended December 31, 2008. However, the following risk factors, in addition to risk factors previously

disclosed in our Annual Report on Form 10-K for the fiscal year ended December 31, 2008, should be considered.

Thus, JBI's 5/20/09 10-Q expressly reiterates and readopts the risk factor from JBI's 3/31/09 10-K quoted above in Paragraph 19 and reports that there has been no change to that risk factor.

24. Additionally, Page 2 of JBI's 5/20/09 10-Q contains the following instruction: "Indicate by check mark whether the registrant is a shell company (as defined by Rule 12b-2 of the Exchange Act.)" 310 Holdings, Inc. (now JBI), responded to this instruction by checking the box for "No."

25. The definition of a shell company set forth in Rule 12b-2 of the Exchange Act is essentially identical to the definition of a shell company set forth in Rule 144(i)(1)(i), and, therefore, JBI's 5/20/09 10-Q clearly states that JBI is not a shell company as defined by Rule 144(i)(1)(i).

26. Additionally, under the heading "Plan of Operations" the 5/20/09 10-Q explains that 310 Holdings, Inc. (now JBI) is a "startup company" that has commenced operations with language that includes, and is not limited to, the following:

> 310 Holdings, Inc., was incorporated in the State of Nevada on April 20, 2006. We are a startup company and have not realized any significant, consistent revenues. Our efforts, to date, have focused primarily on the development and implementation of our business plan. Management has started to commence operations with Plastic2Oil, a process and service that extracts fuel from plastic.
>
> ***
>
> Management is transitioning the company to become a global technology leader whose purpose is to mine data from Bordynuik's large information archive, find underproductive entities to inject our superior proprietary technologies into, and benefit from increased productivity and profitability, beginning with Plastic2Oil.

27.  As explained in Footnote 172 of SEC Release 8869 (2007), a "startup company" that has commenced even limited operations as described in JBI's 5/20/09 10-Q is not a shell company as defined in Rule 144(i)(1)(i): "Contrary to commentators' concerns, Rule 144(i)(1)(i) is not intended to capture a "startup company," or, in other words, a company with a limited operating history, in the definition of a reporting or non-reporting shell company, as we believe that such a company does not meet the condition of having "no or nominal operations."

28.  Bordynuik signed JBI's 5/20/09 10-Q and certified that all of the statements set forth therein are true and correct.

29.  Together or singularly, all of the above-described statements in JBI's 5/20/09 10-Q constitute "Form 10 Information" reporting that JBI is no longer a shell company for purposes of Rule 144(i)(2), as defined in Rule 144(i)(3).

30.  In all subsequent Form 10-Qs filed by 310 Holdings, Inc. and JBI after the 3/31/09 10-Q, the company reported and represented to the investing public that it is not a shell company as defined by Rule 12b-2 of the Exchange Act and Rule 144(i)(1)(i).

31.  During the 12 months preceding April 1, 2010, 310 Holdings, Inc., (now JBI) "filed all reports and other materials required to be filed by section 13 or 15(d) of the Exchange Act, as applicable...other than Form 8-K reports" as set forth in Rule 144(i)(2).

32.  As of April 1, 2010, JBI was not, in fact, a shell company as defined in Rule 144(i)(1).

33.  As of May of 2010, Seneca was not an affiliate of JBI as that term is defined in Rule 144.

34. As of April 1, 2010, JBI had satisfied all requirements of Rule 144(c)(1) for making available "adequate current public information" regarding JBI.

35. As of April 16, 2010, Seneca had held his Shares in 310 Holdings, Inc. (now JBI) for a period of greater than six months as defined in, without limitation, Rule 144(d)(1)(i) & (3).

36. As of August 3, 2010, Seneca had held his Shares in JBI for a period of greater than six months as defined in, without limitation, Rule 144(d)(1)(i) & (3).

37. As early as May 2010, Seneca was entitled to have the restrictive legend removed from his 310 Holdings, Inc. shares pursuant to Rule 144, which removal would have authorized Seneca to sell the Shares in the public market and/or hypothecate them as unrestricted stock.

38. As early as August 3, 2010, Seneca was entitled to have the restrictive legend removed from his JBI shares pursuant to Rule 144, which removal would have authorized Seneca to sell the Shares in the public market and/or hypothecate them as unrestricted stock.

39. In or about May 2010, JBI's shares were trading on the OTCBB exchange at a price of approximately $4.50-$5.70 per share.

40. Although Seneca was entitled to have the restrictive legend removed from 151,563 Shares of 310 Holdings, Inc. (now JBI) as of May 2010, JBI and Bordynuik improperly delayed and denied the legend's removal from the Shares for many months. That unreasonable delay prohibited Seneca from selling or hypothecating his shares and caused him tremendous damages as the share-price of JBI's stock fell precipitously during the delay.

41.  Additionally, JBI's mandatory Form 10-Q for the quarter ending March 31, 2010, was required to be filed with the SEC on or before May 25, 2010.

42.  Acting on JBI's behalf, Bordynuik prevented JBI from timely filing its 3/31/10 10-Q and placed JBI out of compliance with its reporting requirements as a public company.  This was purportedly done in bad faith to continue to refuse to issue opinion letters and instructions to Pacific for removal of the restrictive legends on its Shares.

43.  JBI did not file its 3/31/10 10-Q with the SEC until July 16, 2010.

44.  JBI and Bordynuik's failure to timely file JBI's 3/31/10 10-Q first caused the OTCBB exchange to publicly report JBI as delinquent in the filing by placing an "E" next to JBI's stock symbol and to later de-list JBI for filing to timely file the 3/31/10 10-Q.  These actions caused JBI's stock price to fall dramatically, which, in turn, caused Seneca to suffer further damages as a result of JBI and Bordynuik's bad faith actions in wrongfully denying Seneca the right to have the restrictive legend removed from his Shares.

45. Pursuant to the Agreement, paragraph 7.5, JBI had the following requirements:

7.5   Filing Requirements.  For a period of two (2) years from the Closing Date, the Company will (A) cause its Common Stock to continue to be registered under Section 12(b) or 12(g) of the 1034 Act, (b) comply in all respects with its reporting and filing obligations under the 1934 Act, and (C) comply with all requirements related to any registration statement filed pursuant to this Agreement.  The Company will use its best efforts not to take any action or file any document (whether or not permitted by the 1933 Act or the 1934 Act or the rules thereunder) to terminate or suspend such registration or to terminate or suspend its reporting and filing obligations under said acts.  The Company will continue the quotation of the Common Stock on the OTCBB and will comply in all respects with the Company's reporting, filing and other obligations under the bylaws or rules of the OTCBB.

46.   JBI and Bordynuik failed to comply with these contractual obligations by failing to submit a timely 3/31/10 10-Q to the SEC.

47.   From May of 2010 to August of 2010, JBI's stock price fell precipitously from approximately $5.70 per share to approximately $.75 per share as a result of the actions of JBI and Bordynuik.  Accordingly, Seneca has been damaged in excess of one million dollars as a direct and proximate result of JBI and Bordynuik's actions.

## FIRST CAUSE OF ACTION -- VIOLATION OF SECTION 678.4011, FLORIDA STATUTES, AGAINST ALL DEFENDANTS

48.   Plaintiff realleges the allegations in paragraphs 1 through 47 as if fully set forth herein.

49.   Beginning in May 2010, and continuing through August 2010, Seneca sought to have the restrictive legend removed from his Shares and repeatedly requested JBI to perform the acts of properly recognizing his entitlement to have the restrictive legend immediately removed from his Shares pursuant to the exemption from registration provided by Rule 144 and issuing and/or approving an opinion letter to Pacific stating that the restrictive legend could be removed from the Shares, along with instructions and authorization to Pacific to remove the legend.

50.   From May 2010 through August 2010, and through and at the direction of its CEO, Bordynuik, JBI intentionally, and in bad faith, refused to perform the above-described acts, which caused an unreasonable delay of several months in Seneca's ability to freely sell or hypothecate his Shares, during which the value of his Shares dropped by over a million dollars.   Such refusal by JBI and its agent, Bordynuik, constitutes a violation of Section 678.4011, Florida Statutes ("§678.4011").

51. Seneca has suffered damages as a direct and proximate result of the unreasonable delay in his ability to publicly sell his Shares and/or hypothecate them as unrestricted stock caused by JBI and its agent, Bordynuik, and their intentional and bad-faith violation of §678.4011. Specifically, JBI's stock price fell drastically from May 2010 to August 2010, while these defendants were continuously violating §678.4011.

52. Pursuant to §678.4011, Seneca is entitled to recover damages from JBI and Bordynuik as a result of the unreasonable delay in his ability to freely sell or hypothecate his Shares.

53. As a result of Defendants' actions, Plaintiff has been damaged in an amount in excess of one million dollars.

## SECOND CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY AGAINST BORDYNUIK

54. Plaintiff realleges the allegations in paragraphs 1 through 47 as if fully set forth herein.

55. As an officer and director of JBI, Bordynuik owed Seneca, as a shareholder in JBI, a fiduciary duty to cause JBI to timely issue to Pacific an opinion letter stating that the restrictive legend could be removed from Seneca's Shares and instructions to remove the legend from the Shares from May 2010 forward, when Seneca was entitled to have the legend removed, and to otherwise not take any action that would prohibit or obstruct the timely and rightful removal of the restrictive legend from Seneca's Shares.

56. Bordynuik breached his fiduciary duty to Seneca by failing to cause JBI to timely issue to Pacific an opinion letter stating that the restrictive legend could be removed from the Shares, and instructions to remove the legend from the Shares from

May 2010 forward, when Seneca was entitled to have the legend removed, and by otherwise taking actions that precluded the timely and rightful removal of the restrictive legend form the Shares.

57. Bordynuik further breached his fiduciary duty to Seneca by taking action that caused a dramatic decrease in JBI's stock price.

58. Bordynuik's breach of fiduciary duty to Seneca has directly and proximately caused significant damages to Seneca.

59. As a result of Defendant's actions, Plaintiff has been damaged in an amount in excess of one million dollars.

### THIRD CAUSE OF ACTION – NEGLIGENCE AGAINST BORDYNUIK

60. Plaintiff realleges the allegations in paragraphs 1 through 47 as if fully set forth herein.

61. As an officer and director of JBI, Bordynuik owed Seneca, as a shareholder in JBI, a duty to use reasonable care not to take any action that could prohibit Seneca from realizing the full value of his Shares in JBI including, but not limited to, failing to cause JBI to timely issue an opinion letter to Pacific stating that the restrictive legend could be removed from Seneca's Shares and instructions to remove the legend from the Shares from May 2010 forward when Seneca was entitled to have the legend removed.

62. Bordynuik breached his duty of reasonable care to Seneca by, without limitation, failing to cause JBI or its attorney to timely issue or approve an opinion letter to Pacific stating that the restrictive legend could be removed from the Shares, and instructions to remove the legend from the Shares from May 2010 forward when Seneca

was entitled to have the legend removed, and by otherwise taking actions, or omitting to take actions, that precluded the timely and rightful removal of the restrictive legend from the Shares.

63. Bordynuik further breached his duty of reasonable care to Seneca by taking action that caused a dramatic decrease in JBI's stock price.

64. Bordynuik's negligent breaches of his duty of care to Seneca have directly and proximately caused Seneca damages.

65. As a result of Defendant's actions, Plaintiff has been damaged in an amount in excess of one million dollars.

### FOURTH CAUSE OF ACTION - FRAUD AGAINST BORDYNUIK AND JBI

66. Plaintiff realleges the allegations in paragraphs 1 through 47 as if fully set forth herein.

67. Seneca was informed by Bordynuik, as an agent of JBI, that he was not entitled to have the restrictive legend removed from his stock certificates under Rule 144 until August 2010. These were false statements of material fact because Seneca was entitled to removal of the legend in May 2010.

68. Bordynuik knew his statements were false when made.

69. Bordynuik made these false statements with the intention of inducing Seneca to rely and act upon such statements.

70. Seneca was forced to rely and act upon the statements because the restrictive legend on the Shares expressly required JBI's authorization for it to be removed, and Pacific would not remove the restrictive legend without said authorization.

71. Seneca reasonably, detrimentally, and justifiably relied on Bordynuik's false statements because Seneca could not take any further actions to get the restrictive legend removed from his Shares, and he was prohibited from getting the legend removed as a result of such statements.

72. Seneca suffered damages as a result of Bordynuik's false statements because his Shares dropped dramatically in value while Seneca was delayed in rightfully having the restrictive legend removed from his Shares.

73. Bordynuik's statements were made as an agent of JBI and JBI is liable therefore.

74. Defendants' actions have directly and proximately caused Seneca damages.

75. As a result of Defendant's actions, Plaintiff has been damaged in an amount in excess of one million dollars.

## FIFTH CAUSE OF ACTION – INFORMATION NEGLIGENTLY SUPPLIED FOR THE GUIDANCE OF OTHERS PURSUANT TO RESTATEMENT (SECOND) OF TORTS, SECTION 552, AGAINST JBI

76. Plaintiff realleges the allegations in paragraphs 1 through 47 as if fully set forth herein.

77. JBI contracted with an attorney who holds himself out to the public as specializing in, and actually specializes in, securities law.

78. As such, JBI, through its attorney, had superior knowledge than, and was in a superior position to, Seneca regarding the issue of whether Seneca was entitled to have the restrictive legend removed from his JBI Shares and the ultimate disposition of Seneca's request for the legend's removal from the Shares.

79. JBI's statements to Seneca in May 2010 that the restrictive legend on Seneca's Shares was not immediately eligible for removal under Rule 144 was a false statement of material fact because Seneca was, in fact, entitled to have the restrictive legend removed immediately in May 2010.

80. Seneca was forced to rely on JBI's statements about his entitlement to have the restrictive legend removed from his Shares because, without limitation: a) the restrictive legend on the Shares expressly required JBI's authorization for it to be removed, and Pacific would not remove the restrictive legend without JBI's authorization; b) JBI's attorney was its agent regarding Seneca's request to have the legend removed from his Shares; c) either in actuality, or as a pretext, JBI would not authorize Pacific to remove the restrictive legend from Seneca's Shares unless and until JBI authorized the legend's removal; and d) Seneca could not, therefore, further his efforts to have the restrictive legend removed from his Shares unless and until JBI authorized the legend's removal.

81. JBI made the false statements in the course of its business.

82. JBI made the false statements for the guidance of Seneca because he was forced to rely on JBI's statements regarding his entitlement to have the restrictive legend removed from his Shares.

83. Seneca reasonably, justifiably, and detrimentally relied on JBI's false statements because Seneca could not take any further actions to get the restrictive legend removed from his Shares and was prohibited from getting the legend removed as a result of such statements.

84.  JBI failed to exercise reasonable care or competence in obtaining or communicating the information contained within the false statements it made to Seneca.

85.  Seneca directly, proximately, and/or consequently suffered tremendous damages as a result of JBI's false statements because his Shares suffered an incredible diminution in value while Seneca was materially delayed in rightfully having the restrictive legend removed from his Shares due to JBI's false statements.

86.  JBI made the false statements for the purpose of furthering JBI's business and interests and that of its shareholders other than Seneca.

87.  As a result of Defendants' actions, Plaintiff has been damaged in an amount in excess of one million dollars.

### SIXTH CAUSE OF ACTION – COMMON LAW NEGLIGENT MISREPRESENTATION AGAINST AND JBI

88.  Plaintiff realleges the allegations in paragraphs 1 through 47 as if fully set forth herein.

89.  JBI employed the services of an attorney who holds himself out to the public as specializing in, and actually specializes in, securities law.

90.  As such, JBI had superior knowledge than, and was in a superior position to, Seneca regarding the issue of whether Seneca was entitled to have the restrictive legend removed from his JBI Shares and the ultimate disposition of Seneca's request for the legend's removal from his Shares.

91.  JBI's statements to Seneca in May of 2010, that the restrictive legend on Seneca's Shares was not eligible for removal under Rule 144 as of May 2010, and would not be eligible for removal until August 2010 were false statements of material fact

because Seneca was entitled to have the restrictive legend immediately removed from his Shares in May 2010.

92. JBI either knew, or should have known, that its statements were false when made, or it made the false statements without knowledge of their truth or falsity.

93. JBI made these false statements with the intention of inducing Seneca to rely and act upon such statements and Seneca was forced to rely and act upon JBI's false statements.

94. Seneca reasonably, justifiably, and detrimentally relied on JBI's false statements because Seneca could not take any further actions to get the restrictive legend removed from his JBI Shares, and Seneca was prohibited from getting the legend removed as a result of such statements.

95. Seneca directly, proximately, and/or consequently suffered tremendous damages as a result of JBI's false statements because his Shares suffered an incredible diminution in value while Seneca was materially delayed in rightfully having the restrictive legend removed from his Shares due to JBI's false statements.

96. JBI made the false statements for the purpose of furthering JBI's business and interests and that of its shareholders other than Seneca.

97. As a result of Defendants' actions, Plaintiff has been damaged in an amount in excess of one million dollars. Plaintiff is additionally entitled to punitive damages due to Defendants' fraudulent actions.

## SEVENTH CAUSE OF ACTION – BREACH OF CONTRACT AGAINST JBI

98. Plaintiff realleges the allegations in paragraphs 1 through 47 as if fully set forth herein.

99. Pursuant to the Agreement, JBI acquired 100% of the issued and outstanding membership units of Pak-It, in exchange for the issuance by JBI of an aggregate of 625,000 shares of common stock of JBI to the Pak-It Unitholders. As a result, Pak-It became a wholly owned subsidiary of JBI.

100. Seneca was the holder of 24.25% of the membership units of Pak-It. As a result of the Agreement, Seneca received 151,563 shares of common stock of 310 Holdings, Inc. (now JBI).

101. Pursuant to the Agreement, paragraph 7.5, JBI had the following requirements:

7.5    Filing Requirements.  For a period of two (2) years from the Closing Date, the Company will (A) cause its Common Stock to continue to be registered under Section 12(b) or 12(g) of the 1034 Act, (b) comply in all respects with its reporting and filing obligations under the 1934 Act, and (C) comply with all requirements related to any registration statement filed pursuant to this Agreement.  The Company will use its best efforts not to take any action or file any document (whether or not permitted by the 1933 Act or the 1934 Act or the rules thereunder) to terminate or suspend such registration or to terminate or suspend its reporting and filing obligations under said acts.  The Company will continue the quotation of the Common Stock on the OTCBB and will comply in all respects with the Company's reporting, filing and other obligations under the bylaws or rules of the OTCBB.

102. JBI and Bordynuik failed to comply with these contractual obligations by failing to submit a timely 3/31/10 10-Q to the SEC, resulting in breach of the Agreement.

103. From May of 2010 to August of 2010, JBI's stock price fell from approximately $5.70 per share to approximately $.75 per share as a direct and proximate result of the actions of JBI and Bordynuik.

104. As a result of Defendant's actions, Plaintiff has been damaged in an amount in excess of one million dollars.

## EIGHTH CAUSE OF ACTION – CIVIL CONSPIRACY AS TO ALL DEFENDANTS

105. Plaintiff realleges the allegations in paragraphs 1 through 47 as if fully set forth herein.

106. JBI and Bordynuik engaged in a successful conspiracy to commit unlawful acts against Seneca and at his expense that include, but are not limited to, the following:

  a. Intentionally and unreasonably delaying Seneca's efforts and ability to have the restrictive legend removed from his JBI Shares in violation of §678.4011; and

  b. Defrauding Seneca by repeatedly and falsely telling him that the restrictive legend was not eligible for removal from his JBI Shares when, in fact, the legend was eligible for removal in order to delay Seneca's efforts and ability to have the restrictive legend removed from his JBI Shares.

107. JBI and Bordynuik engaged in multiple overt acts in pursuance of such conspiracy including, but not limited to:

  a. JBI and Bordynuik refusing to authorize removal of the restrictive legend from Seneca's JBI Shares even though Seneca was entitled to have the legend removed pursuant to Rule 144;

  b. JBI falsely stating to Seneca that the restrictive legend was not eligible for removal from Seneca's Shares under Rule 144 when, in fact, the legend was eligible for removal under Rule 144; and/or

  c. JBI's and Bordynuik's causing of JBI to fall out of compliance with its reporting requirements by delaying the filing of JBI's 10-Q in

the second quarter of 2010 in order to create a pretext for refusing to authorize removal of the restrictive legend from Seneca's Shares.

108. JBI had its own interest in prohibiting and/or delaying the removal of the restrictive legend from Seneca's Shares because JBI was concerned that Seneca's public sale and/or hypothecation of the Shares would cause a significant diminution in JBI's share price, which would, in turn, materially and detrimentally affect JBI's ability to raise capital through PIPE offerings or otherwise and have other negative effects on JBI's ability to successfully operate its business.

109. Bordynuik had a personal stake and interest in prohibiting and/or delaying the removal of the restrictive legend from Seneca's Shares, which was separate and distinct from JBI's interest in doing so, because: a) Bordynuik is JBI's single largest shareholder whose personal net worth and financial stability is inextricably tied to JBI's share price and business success; b) Bordynuik has made large investments of cash and other capital in JBI, the return on which is inextricably tied to JBI's share price and business success; and, therefore c) Bordynuik feared that Seneca's public sale and/or hypothecation of the Shares would cause a significant diminution in JBI's share price, which would, in turn, have a tremendous negative impact on Bordynuik's personal financial solvency.

110. Seneca has suffered tremendous damages as a result of the overt acts performed by JBI and Bordynuik in pursuance of the successful conspiracy to unreasonably delay Seneca from selling his Shares in the public market and/or hypothecating them as unrestricted stock.

111. As a result of Defendants' actions, Plaintiff has been damaged in an amount in excess of one million dollars.        .

**WHEREFORE,** Plaintiff, STEPHEN SENECA, prays for judgment against Defendants, jointly and severally, as follows:

1.    For compensatory damages in an amount in excess of one million dollars;

2.    For an award of pre- and post-judgment interest;

3.    For an award of costs incurred herein; and

4.    For such other relief as the Court deems just and equitable.

Dated this 20th day of August, 2013.

**LAW OFFICE OF GABLE & HEIDT**

By: _____/s/_____

Michael Heidt, Esq.
Florida Bar No. 435414
Attorneys for the Plaintiff
4000 Hollywood Blvd., Suite 735 South
Hollywood, Florida  33021
Tel: (954) 966-2501
Fax: (954) 964-2294
Email: mheidt@aol.com