UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BIG 3 PACKAGING, LLC

    Plaintiff/Counter-Defendant,　　　　　　　　　　　　　Case No. 12-cv-05806-PBT

v.

AQUA CHEMPACS, LLC

    and

SIMONIZ USA, INC.

    and

STEPHEN SENECA

    and

NATIONAL ACCOUNT
    SOURCING, INC.

    and

FLOOR MECHANICS, LLC

    Defendants/Counter-Plaintiffs/Third-Party Plaintiffs

v.

RICHARD HIGGS

    Third-Party Defendant

---

**DEFENDANTS AQUA CHEMPACS, LLC, SIMONIZ USA, INC.,
STEPHEN SENECA, NATIONAL ACCOUNT SOURCING, INC.'S
<u>AMENDED COUNTERCLAIMS AND THIRD PARTY COMPLAINT</u>**

    Defendants/Counter-Plaintiffs/Third-PartyPlaintiffs, Aqua ChemPacs, LLC ("Aqua ChemPacs"), Simoniz USA, Inc. ("Simoniz"), Stephen Seneca ("Seneca"), and National Account Sourcing, Inc. ("NAS"), (collectively "Counter-Plaintiffs"), assert the following counterclaims

PHIL1 2956847v.2

against Counter-Defendant Big 3 Packaging, LLC ("B3P") and third-party claim against Third-Party Defendant Richard Higgs ("Higgs") and allege:

### GENERAL ALLEGATIONS

1. Aqua ChemPacs is a privately-held Delaware limited liability company that has its principal place of business at 515 Andrews Road, Trevose, PA 19053.

2. Simoniz is a privately held Connecticut company that is headquartered at 201 Boston Turnpike, Bolton, CT 06043.

3. Seneca is an individual residing at 9140 NW 47 Court, Coral Springs, Florida 33067 and is employed by Aqua ChemPacs.

4. NAS is a Florida corporation whose principal place of business is located at 9140 NW 47 Court, Coral Springs, Florida 33067.

5. On information and belief, B3P is a New Jersey limited liability company with its principal place of business at 4201 Torresdale Avenue, Philadelphia, Pennsylvania, 19124. B3P is in the business of, *inter alia*, selling unit-dose, water-soluble packaging solutions for industrial and consumer applications.

6. On information and belief, Richard Higgs is an individual residing within this judicial district and is employed by B3P.

7. This is a civil action regarding, *inter alia*, false allegations of patent infringement arising under the patent laws of the United States, Title 35 of the United States Code and Aqua ChemPacs, Simoniz, Seneca, and NAS seek declaratory judgment over the subject matter of this matter under 28 U.S.C. §§1331, 1338(a), 2201 and 2002.

8. This Court has personal jurisdiction over B3P and Richard Higgs because B3P sued Aqua ChemPacs, Simoniz, Seneca, and NAS in this judicial district and because, on

2

information and belief, B3P has offices in the Commonwealth of Pennsylvania and regularly conducts business activities in the Commonwealth of Pennsylvania and this judicial district, and because, on information and belief, Richard Higgs resides and is domiciled within this judicial district.

9. Venue is proper for Counter-Plaintiffs' counterclaims based on 28 U.S.C. §§1391 and 1400 and because B3P has sued Counter-Plaintiffs in this judicial district.

10. Aqua ChemPacs makes, uses, offers to sell or sells water-soluble packaging solutions for industrial and consumer applications. ("Accused Products").

11. Simoniz is a distributor of the Accused Products.

12. In its Complaint, B3P has asserted that Counter-Plaintiffs' Accused Products infringes United States Patent No. 6,037,319 ("the '319 Patent").

13. Counter-Plaintiffs have denied B3P's charge of infringement under the '319 Patent and has alleged that the '319 Patent is not infringed and is invalid.

### COUNT I
### (For A Declaration That The '319 Patent Is Not Infringed)
### (Counter-Plaintiffs' counteclaim against B3P)

14. Counter-Plaintiffs repeat and incorporate herein Paragraphs 1 through 13 of this Counterclaim as though set forth fully herein.

15. An actual, live and justiciable controversy exists between Counter-Plaintiffs and B3P as to whether Counter-Plaintiffs' Accused Products infringe B3P's alleged rights under the '319 Patent.

16. B3P contends that Counter-Plaintiffs infringe the '319 Patent.

17. Counter-Plaintiff's deny B3P's contentions and allege that the '319 Patent, and each of its claims, are not infringed, either literally or under the doctrine of equivalents.

PHIL1 2956847v.2

18. As a result, Counter-Plaintiffs seek, and are entitled to, a judgment against B3P that the '319 Patent, and each of its claims, are not infringed, either literally or under the doctrine of equivalents.

## COUNT II
### (For A Declaration That the '319 Patent Is Invalid)
### (Counter-Plaintiffs' counterclaim against B3P)

19. Counter-Plaintiffs repeat and incorporate herein Paragraphs 1 through 18 of this Counterclaim as though set forth fully herein.

20. An actual, live and justiciable controversy exists between Counter-Plaintiffs and B3P as to whether the '319 Patent, and each of its claims, are invalid.

21. B3P contends that the '319 Patent and each of its claims are valid and enforceable.

22. Counter-Plaintiffs allege that the '319 Patent, and each of its claims, are invalid for failing to meet the conditions of patentability set forth in Title 35 of the United States Code, including without limitation 35 U.S.C. §§102, 103, 112.

23. As a result, Counter-Plaintiffs seek, and are entitled to, a judgment against B3P that the '319 Patent, and each of its claims, are invalid and not enforceable.

## COUNT III
### (Unfair Competition)
### (Counter-Plaintiffs' counterclaim against B3P)

24. Counter-Plaintiffs repeat and incorporate herein Paragraphs 1 through 22 of this Counterclaim as though set forth fully herein.

25. Upon information and belief, B3P know that that Counter-Plaintiffs do not and have not infringed any claim of the '319 Patent.

PHIL1 2956847v.2

26. Upon information and belief, B3P knows that the '319 Patent is invalid in view of one or more prior art references.

27. Upon information and belief, B3P has instituted the present action in bad faith and for the purpose of damaging and harming Counter-Plaintiffs.

28. Despite knowing that Accused Products do not infringe the '319 Patent, B3P has committed acts of unfair competition in violation of the Lanham Act (15 U.S.C. §1125) by sending letters to customers and others in the industry advising that Counter-Plaintiffs have infringed the '319 Patent.

29. Counter-Plaintiffs are entitled to recover damages, costs, and attorney fees, as provided in 15 U.S.C. § 1117, as they have lost sales because of these acts, as well as harm to reputation and goodwill.

30. Counter-Plaintiffs seek preliminary and permanent injunctive relief to enjoin the acts of B3P complained of herein.

**COUNT IV**
**(Declaratory Judgment of Inequitable Conduct)**
**(Counter-Plaintiffs' counterclaim against B3P)**

31. Counter-Plaintiffs repeat and incorporate herein Paragraphs 1 through 30 of this Counterclaim as though set forth fully herein.

32. An actual, live and justiciable controversy exists between Counter-Plaintiffs and B3P as to whether the '319 Patent, and each of its claims, are void and unenforceable.

33. B3P contends that the '319 Patent and each of its claims are valid and enforceable.

34. Counter-Plaintiffs allege that the '319 Patent, and each of its claims, are void and/or unenforceable due to a breach of a duty of candor by the inventors and others having a duty of candor.

35. Counter-Plaintiffs allege that the '319 Patent is unenforceable due to actions by the original assignee of the application -- Dickler Chemical Labs, Inc. ("DCL") -- that resulted in the '319 Patent ("the '319 Patent Application").

36. The named inventors on the '319 Patent are Mr. Larry Dickler ("Dickler") and Dr. Barry Ruck ("Ruck").

37. Upon information and belief, the origins of the '319 Patent began when Mr. Thomas G. Cicini ("Cicini"), a then employee of DCL, was exposed to dissolving films at a Packaging Exposition in Chicago, Illinois in the early 1990s.

38. Upon information and belief, a short time thereafter, Cicini began dealing with Chris Craft Industrial Products' MonoSol Division ("MonoSol") with respect to dissolvable films and dissolvable film products.

39. Upon information and belief, MonoSol informed Cicini that it was supplying a water-soluble film to a French company, Greensol, and also informed Cicini that Greensol was using the film to package liquid, powder, and granular products for its customers, most of which were cleaning products, including detergents and cleansers.

40. Upon information and belief, Cicini also learned from MonoSol that MonoSol's polyvinyl alcohol (PVA) films were being used by a company called Greensol in Europe to package liquid detergent cleaning products.

41. Upon information and belief, Cicini conveyed all of this information to Ruck who suggested that DCL consider developing water-soluble packets comprised of liquid cleaning product concentrates.

42. Upon information and belief, Cicini began working on a family of water-soluble cleaning product concentrates with the goal of achieving a liquid product that was similar to what was already being manufactured and sold to Greensol's customers in Europe and elsewhere.

43. Upon information and belief, in late 1995, Cicini and Dickler visited Greensol's plant in France to view the packaging process with the equipment Greensol had modified to package liquid-filled water-soluble film products.

44. DCL ultimately entered into a license agreement with Greensol that provided DCL access to Greensol's equipment and know-how.

45. Upon information and belief, Cicini made multiple visits to Greensol to obtain additional information about packaging liquids in PVA film as well as how to use the Greensol equipment DCL had obtained.

46. Upon information and belief, Cicini developed the various formulations for the DCL liquid product concentrates that it was going to introduce.

47. Upon information and belief, Cicini took the chemical formulations he developed and packaged them in the MonoSol film in the same fashion and with the same equipment being used by Greensol in France.

48. Upon information and belief, Cicini created sample products and demonstrated them to customers in late 1995 or early 1996.

7

49. Upon information and belief, DCL did not require a nondisclosure agreement before performing these demonstrations to customers during the time period referenced above.

50. Cicini left DCL in about May 1996 and sometime thereafter his new company began manufacturing and selling water-soluble film detergent products in the U.S.

51. DCL filed the '319 Patent Application in April 1997 and did not name Cicini as an inventor despite the fact that, upon information and belief, he conceived of and developed various aspects of the claimed invention.

52. Upon information and belief, to the extent the '319 Patent has any novelty, Cicini should have been named as an inventor.

53. Upon information and belief, Dickler was not involved in the conception of the subject matter claimed in any claim of the '319 Patent.

54. Upon information and belief, Cicini did not have an employment agreement with DCL and had no obligation to assign any inventions to DCL.

55. Upon information and belief, DCL intentionally failed to name Cicini as an inventor since he was no longer an employee of DCL at the time the application was filed and to eliminate any potential ownership claim by Cicini.

56. Upon information and belief, DCL intentionally failed to identify Cicini as an inventor of the '319 Patent Application with full knowledge that he should have been named as an inventor and that this action was taken with a specific intent to deceive.

57. Upon information and belief, DCL intentionally named Dickler as an inventor of the '319 Patent Application with full knowledge that he did not conceive of any part of the claimed invention and that this was done with a specific intent to deceive.

58. Upon information and belief, DCL obtained information about Greensol's work in Europe with packaging liquid cleaning products in water-soluble film and failed to disclose this information to the United States Patent and Trademark Office ("USPTO").

59. Upon information and belief, the MonoSol film used by Greensol is the same film referenced in the '319 Patent,

60. The failure to disclose this Greensol information to the USPTO was done with an intent to deceive.

61. DCL's failure to disclose material information to the USPTO, including one of the actual inventors of the subject matter of the claims the '319 Patent Application is a violation of its duty of candor under 37 C.F.R. 1.56.

62. DCL and the named inventors on the '319 Patent failed to disclose material prior art information to the USPTO of which it was aware and that would have affected the patentability of at least one claim of the '319 Patent Application. This is also a violation of their duty of candor under 37 C.F.R. 1.56.

63. As a result of DCL's various violations of its duty of candor, the '319 Patent is unenforceable due to inequitable conduct.

64. As a result, Counter-Plaintiffs seek, and are entitled to, a judgment against B3P that the '319 Patent, and each of its claims, are invalid and not enforceable.

### COUNT V
**(Commercial Disparagement)**
**(Counter-Plaintiffs' Counterclaim against B3P and**
**Third-Party Complaint against Higgs)**

65. Counter-Plaintiffs repeat and incorporate herein Paragraphs 1 through 64 of this Counterclaim as though set forth fully herein.

PHIL1 2956847v.2

66. Upon information and belief, B3P and Higgs know that Counter-Plaintiffs do not and have not infringed any claim of the '319 Patent.

67. Upon information and belief, B3P and Higgs knew or should have known that the '319 Patent is invalid in view of one or more prior art references.

68. Despite having actual and/or constructive knowledge that Accused Products do not infringe the '319 Patent, B3P and Higgs have committed acts of commercial disparagement in violation of Pennsylvania law by sending letters and making phone calls to customers and others in the industry advising that Counter-Plaintiffs have infringed the '319 Patent.

69. Upon information and belief, B3P and Higgs knew or should have recognized that the sending of the letters to customers and others in the industry would result in pecuniary loss to Counter-Plaintiffs.

70. Counter-Plaintiffs are entitled to recover damages, costs, and attorney fees, as they have lost sales because of these acts, as well as harm to reputation and goodwill.

71. Counter-Plaintiffs seek preliminary and permanent injunctive relief to enjoin the acts of B3P and Higgs complained of herein.

**PRAYER FOR RELIEF**

WHEREFORE, Counter-Plaintiffs Aqua ChemPacs, LLC ("Aqua ChemPacs"), Simoniz USA, Inc. ("Simoniz"), Stephen Seneca ("Seneca"), and National Account Sourcing, Inc. ("NAS") respectfully requests the following relief.

72. That the Court deny B3P any and all relief under its Complaint.

73 That the Court dismiss the Complaint against Aqua ChemPacs, Simoniz, Seneca, and NAS in its entirety, with prejudice.

10

PHIL1 2956847v.2

74. That the Court determine and declare that Aqua ChemPacs, Simoniz, Seneca, and NAS do not infringe, literally or under the doctrine of equivalents, any valid claim of the '319 Patent.

75. That the Court determine and declare that each of the claims of the '319 Patent are invalid and that B3P is without any right or authority to enforce or threaten to enforce any claim of the '319 Patent against Aqua ChemPacs, Simoniz, Seneca, and NAS or any other party.

76. That the Court determine and declare that Aqua ChemPacs, Simoniz, Seneca, and NAS is free to operate without a cloud of infringement claims by B3P.

77. That the Court grant Aqua ChemPacs, Simoniz, Seneca, and NAS all appropriate monetary relief, including a finding that this case is an exceptional case under 35 U.S.C. §285, and award Aqua ChemPacs, Simoniz, Seneca, and NAS its reasonable attorney fees and costs incurred in this action.

78. That the Court grant Aqua ChemPacs, Simoniz, Seneca, and NAS such other and further relief, either in law or equity, as the Court determines is just and equitable.

                          Respectfully submitted,

                          /s/ Paul G. Nofer
                          Paul G. Nofer
                          Klehr Harrison Harvey Branzburg LLP
                          1835 Market Street, Suite 1400
                          Philadelphia, PA 19103
                          pnofer@klehr.com
                          (215) 569-3287

                          John S. Artz
                          Jill Ingber
                          Bryan J. Schomer
                          Dickinson Wright PLLC
                          2600 W. Big Beaver Road
                          Suite 300
                          Troy, MI 48084-3312
                          johnsartz@dickinsonwright.com
                          (248) 433-7262

                          *Attorneys for Defendants, Aqua ChemPacs, LLC, Simoniz USA, Inc., Stephen Seneca, and National Account Sourcing, Inc.*

Dated: August 2, 2013

PHIL1 2956847v.2

13

## Certificate of Service

I hereby certify that upon filing of the foregoing document all counsel of record will be served via the court's electronic filing system.

/s/ Paul G. Nofer
Paul G. Nofer