UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-61809-CIV-ROSENBAUM/HUNT

STEPHEN SENECA,

      Plaintiff,

v.

JBI, INC., and JOHN BORDYNUIK,

      Defendants.

_____/

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

This matter is before the Court upon Defendants' Motion to Dismiss Plaintiff's Complaint [ECF No. 13]. The Court has reviewed Defendants' Motion, all supporting and opposing filings, and the record in this case and is otherwise fully advised in the premises. For the reasons set forth below, the Court grants in part Defendants' Motion to Dismiss.

### BACKGROUND

Defendant John Bordynuik is the president and chief executive officer of Defendant JBI, Inc. ("JBI"), a publicly owned Nevada corporation.[1] ECF No. 1 at 1-2, ¶¶ 2, 3. JBI acquired Pak-It, LLC ("Pak-It"), on September 30, 2009, pursuant to a Unit Purchase and Exchange Agreement between JBI, Pak-It, and Pak-It's unitholders. ECF No. 1-2. The Agreement provided,

> For a period of two (2) years from the Closing Date, [JBI] will (A) cause its Common Stock to continue to be registered under Section 12(b) or 12(g) of the [Securities and Exchange Act of 1934], (B) comply in all respects with its reporting and filing obligations under the 1934 Act, and (C) comply with all requirements related to any registration statement filed pursuant to this Agreement. . . .

_____

[1] JBI was formerly known as 310 Holdings, Inc. ECF No. 1 at 1-2, ¶ 2.

*Id.* at 14, § 7.5.

Plaintiff Stephen Seneca was a Pak-It unitholder who was a party to the Agreement. *Id.* at 1, 19. As a result of the Agreement, Seneca's ownership of 24.25% of the membership units of Pak-It, LLC, were exchanged for151,563 shares of JBI common stock on October 16, 2009. *Id.*; ECF No. 1-3. Seneca separately acquired another 137,500 shares of JBI common stock on February 3, 2010. ECF No. 1-3.

Seneca's October 16, 2009, and February 3, 2010, stock certificates each bore a restrictive legend noting,

> The securities represented by this certificate have not been registered under the Securities Act of 1933 as amended, or applicable state securities laws. The securities . . . may not be offered for sale, sold, transferred or assigned in the absence of an effective registration statement for the securities under the Securities Act of 1933, as amended, or applicable state securities laws, unless the company has received an opinion of counsel which is satisfactory to the company, to the effect that such registrations are not required.

*Id.*

On March 31, 2009, JBI filed a Form 10-K Annual Report with the Securities and Exchange Commission ("SEC") indicating, under "Risk Factors," "We were a 'shell company' and our shares are subject to restriction on resale."[2]  ECF No. 1-4 at 10. The report elaborated, "Although we are no longer deemed a 'shell company' as defined in Rule 12b-2 of the Securities and Exchange Act

---

[2] A "shell company" is a company with no operations or nominal operations and either "(i) No or nominal assets; (ii) Assets consisting solely of cash and cash equivalents; or (iii) Assets consisting of any amount of cash and cash equivalents and nominal other assets." 17 C.F.R. § 240.12b-2.

of 1934, for the twelve months following this filing, shareholders holding restricted, non-registered shares will not be able to use the exemptions provided under Rule 144 for the resale of their shares of common stock."[3] ECF No. 1-4 at 10. JBI's May 20, 2009, Form 10-Q Quarterly Report, filed with the SEC, also indicated that JBI was not a shell company and noted "no material changes in the risk factors previously disclosed in our Annual Report" with regard to shell-company status. ECF Nos. 1-8 at 2; 1-9 at 14. The May 20, 2009, Quarterly Report was signed by Bordynuik, certifying that all the statements set forth therein were true and correct. ECF No. 1-9 at 20. JBI represented that it was not a shell company in all subsequent Quarterly Reports filed with the SEC. ECF No. 1 at 8, § 30.

From May 2010 through August 2010, Seneca repeatedly requested that JBI have an opinion letter issued to remove the restrictive legend on his stock so that the shares could be sold or transferred. ECF No. 1 at 5, 11, ¶¶ 17, 49. JBI's attorney informed Seneca that the legend could not be removed because the company was a shell company and Seneca would have to wait until August 2010 to have the restriction lifted. *Id.*

Though JBI's quarterly report for the first quarter of 2010 was required to be filed with the SEC by May 25, 2010, according to Seneca, Bordynuik prevented JBI from timely filing the report, and JBI did not file the report until July 16, 2010. *Id.* at 10, ¶¶ 42, 43. The failure to timely file the quarterly report caused the Over-the-Counter Bulletin Board Exchange to publicly report JBI as delinquent by placing an "E" next to JBI's stock symbol, which, Seneca alleges, caused JBI's stock price to fall dramatically. *Id.* ¶ 44. Though JBI stock was trading at about $4.50 to $5.70 per share

---

[3] Rule 144 provides limited exemptions to the prohibition on the sale of non-registered shares. 17 C.F.R. § 230.144.

in May 2010, by August 10, 2010, JBI's stock price had fallen to $0.75 per share.[4] *Id.* at 9, ¶ 39; ECF No. 13-1. Seneca alleges that he suffered damages in excess of one million dollars as a result of the fall in stock price. ECF No. 1 at 11, ¶ 47.

On August 20, 2013, Seneca filed an eight-count Complaint alleging negligence and breach of fiduciary duty against Bordynuik; negligent supply of information under § 552, Restatement (Second) of Torts, common-law negligent misrepresentation, and breach of contract against JBI; and violations of § 678.4011, Fla. Stat., fraud, and civil conspiracy against both Defendants. ECF No. 1. Defendants now move to dismiss the Complaint. ECF No. 13.

## DISCUSSION

### I. Rule 12(b)(6) Standard

Rule 12(b)(6), Fed. R. Civ. P., governs motions to dismiss. That rule provides, in relevant part,

> **(b)     How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
> **(6)     **failure to state a claim upon which relief can be granted; . . . .

*Id*. The Court, therefore, considers the Federal Rules of Civil Procedure as they set forth the requirements for stating a claim.

---

[4] The Court takes judicial notice of the NASDAQ Interactive Stock Chart proffered by JBI that indicates the exact date that JBI's stock price fell to $0.75 per share. *See* ECF No. 13 at 7 n.1.

Rule 8(a)(2), Fed. R. Civ. P., demands that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint need not provide detailed factual allegations, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir. 2009); *Corbitt v. Home Depot U.S.A., Inc.*, 573 F.3d 1223, 1256 (11th Cir. 2009); *Cobb v. State of Florida*, 293 F. App'x 708, 709 (11th Cir. 2008); *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). "[N]aked assertion[s]" bereft of "further factual enhancement" do not suffice. *Twombly*, 550 U.S. at 555, 557. As the Supreme Court has explained, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555. "Moreover, the facts supporting the claim must be 'consistent with the allegations in the complaint.'" *Wilchombe*, 555 F.3d at 958 (quoting *Twombly*, 550 U.S. at 562). On a motion to dismiss, the Court should accept the non-conclusory allegations in the complaint as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003) (internal citation omitted); *see also Cobb*, 293 F. App'x at 709; *Brown v. Budget Rent-A-Car Syst., Inc.*, 119 F.3d 922, 923 (11th Cir. 1997).

Courts therefore conduct a "two-pronged approach" when considering a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 679. A court should first ask whether the pleading properly asserts "well-pleaded factual allegations" or whether, instead, it merely asserts "'legal conclusions' [that are] not entitled to the assumption of truth." *Id*. at 679-80 (quoting *Twombly*, 550 U.S. at 555).

If the complaint contains factual allegations that are well pled, the court should assume their veracity

and then move to the next step, asking whether the factual allegations "plausibly give rise to an

entitlement to relief." *Id*. at 679. Thus, where the pleading asserts non-conclusory, factual allegations

that, if true, would push the claim "across the line from conceivable to plausible," the motion to

dismiss should be denied. *Id*. at 680 (quoting *Twombly*, 550 U.S. at 570) (quotation marks omitted).

### II. Duty to Register Under § 104.8401, Nev. Rev. Stat. (Count I)

Though the Complaint alleges one count under Florida law, ECF No. 1 at 11-12,

Defendants' Motion to Dismiss notes that under Florida law, the local law of the issuer of the

security governs "[t]he rights and duties of the issuer with respect to registration of transfer." Fla.

Stat. § 678.1101(1)(b). Thus, Defendants argue that Nevada law should govern Seneca's claims

because JBI is a Nevada corporation. Seneca's response to the Motion to Dismiss appears to concede

that the substantive law of Nevada, and not Florida, applies to his claims. ECF No. 16.

Defendants therefore posit that Seneca's first count under § 678.4011, Fla. Stat., should

instead be brought under the substantially similar Nevada provision found at § 104.8401, Nev. Rev.

Stat. Both the Florida and Nevada provisions are enactments of the same section of the Universal

Commercial Code ("UCC"). *See* U.C.C. § 8-401 (2005). Seneca does not appear to oppose bringing

the first count under § 104.8401, Nev. Rev. Stat.

Section 104.8401, Nev. Rev. Stat., creates a duty on the part of an issuer of a security to

"register the transfer, pledge, or release" of a stock when requested under certain conditions. Nev.

Rev. Stat. § 104.8401(1). The statute provides, "If an issuer is under a duty to register a transfer of

a security, the issuer is liable to the person presenting a certificated security or an instruction for

registration or his or her principal for loss resulting from unreasonable delay in registration or failure or refusal to register the transfer." *Id.* § 104.8401(2).

Under Nevada law, "[a]n action upon a liability created by statute, other than a penalty or forfeiture," must be commenced "[w]ithin 3 years." Nev. Rev. Stat. § 11.190(3)(a). As alleged in the Complaint, JBI's stock price fell precipitously from May 2010 to August 2010, and Seneca repeatedly requested that JBI remove the restrictive legend during this same period. ECF No. 1 at 11, ¶¶ 47, 49. Because JBI's liability under § 104.8401 arose, at the latest, on August 10, 2010, Seneca was required to bring his § 104.8401 by August 10, 2013. Because Seneca did not file this case until August 20, 2013, JBI argues, Seneca's first count is barred by the Nevada statute of limitations.

Seneca argues that the applicable statute of limitations is § 11.190(3)(d), which provides, "an action for relief on the ground of fraud or mistake [must be commenced within three years], but the cause of action in such a case shall be deemed to accrue upon the discovery by the aggrieved party of the facts constituting the fraud or mistake." Nev. Rev. Stat. § 11.190(3)(d). Seneca argues that he was not aware of JBI's public SEC filings at the time of the requests and only discovered the alleged falsity of JBI's representations after making further, independent inquiry. ECF No. 16 at 7.

But, though Seneca alleges fraudulent conduct in his other counts, liability under § 104.8401 is not premised on the issuer's fraud or mistake but arises, instead, merely from the issuer's "unreasonable delay in registration or failure or refusal to register" whenever a duty to register attaches. Nev. Rev. Stat. § 104.8401(2). Thus, the rule under § 11.190(3)(d) that time begins to run only after the plaintiff discovers the facts that constitute the alleged misconduct does not apply to

Seneca's statutory claims because a § 104.8401 action is not an "action for relief on the ground of fraud or mistake." Thus, Seneca's statutory claim is time barred.

Seneca also cites *Torrealba v. Kesmetis*, 178 P.3d 716 (Nev. 2008), for the notion that the three-year time limit on statutory claims begins to run only after the plaintiff first discovers the alleged misconduct. There, the court concluded, without discussing, that time on a claim under § 240.150, Nev. Rev. Stat, began to run only after the plaintiffs discovered the alleged misconduct. *Id.* at 723. Section 240.150 provides that notaries public are liable to parties injured by their "misconduct or neglect." Nev. Rev. Stat. § 240.150. The statute at issue here, however, creates liability on the part of the issuer for the mere failure or delay in registration. Thus, even if a discovery rule were to apply here, Seneca first knew of JBI's failure to remove the legend in May 2010, so his claim would still be barred by the three-year statute of limitations. Because Seneca's § 104.8401 claim is barred by the statute of limitations, the Court does not address Defendants' arguments for dismissing the claim on other grounds. ECF No. 13 at 7-10.

### III. Claims for Fraud, Negligence, and Breach of Fiduciary Duty (Counts I-VI)

Defendants argue that Seneca's common-law claims for breach of fiduciary duty, fraud, and negligence are preempted by Nevada's statutory UCC provisions. ECF No. 13 at 10-12. Section 104.1103, Nev. Rev. Stat., provides, "Unless displaced by the particular provisions of the Uniform Commercial Code, the principles of law and equity . . . supplement [the UCC's] provisions." Nev. Rev. Stat. 104.1103(2). Defendants point to district-court cases from Delaware and Colorado that held that UCC § 8-401, the provision under which Count I is brought, displaces negligence and breach-of-fiduciary-duty claims against an issuer for failure to register a security. *See Kolber v. Body*

*Cent. Corp.*, No. 11-731, 2012 WL 3095324, \*4-\*5 (D. Del. 2012); *Ajjarapu v. AE Biofuels, Inc.*, 728 F. Supp. 2d 1154, 1164 (D. Colo. 2010) (quoting *Clancy Sys. Int'l, Inc. v. Salazar*, 177 P.3d 1235, 1237 (Colo. 2008)) ("In Colorado, the UCC displaces common law remedies if the UCC and the common law would provide 'a means of recovery for the same loss.'").

In *Davis v. Beling*, 278 P.3d 501 (Nev. 2012), the Nevada Supreme Court discussed the scope of another statutory provision that displaces common-law claims. Section 645.251, Nev. Rev. Stat., provides, "A licensee is not required to comply with any principles of common law that may otherwise apply to any of the duties of the licensee as set forth in NRS 645.252, 645.253 and 645.254." The Court held that § 645.251 "displaces common law forms of liability when the type of conduct complained of overlaps with the conduct covered by NRS 645.252-645.254." *Id.* at 511. Thus, even though § 645.251 does not preclude all forms of common-law liability, such as fraud, a fraud-by-concealment claim is indeed precluded when it is based on conduct—such as failure to disclose material information—that "overlaps with the type of conduct covered by NRS 645.252(1) and NRS 645.254(5)." *Id.* On the other hand, §§ 645.252-645.254 have "nothing to do with" respondeat-superior liability, so that type of liability is not precluded under § 645.251. *Id.*

Thus, only if the conduct alleged in Seneca's common-law claims overlaps with the conduct covered by § 104.8401 will Seneca's common-law claims be displaced. Section 108.8401, by its terms, imposes duties on issuers—defined as "a person on whose behalf transfer books are maintained"—and those "acting as authenticating trustee, transfer agent, registrar or other agent for an issuer in the registration of a transfer of its securities." Nev. Rev. Stat. §§ 104.8201, 104.8407. An issuer, in short, is the corporation whose stocks are being offered. *See S.E.C. v. Murphy*, 626 F.2d

633, 642 (9th Cir. 1980) (collecting cases) ("In a corporate offering, the issuer generally is the company whose stock is sold."). Thus, § 104.8401 cannot displace Counts II and III because those counts are against Bordynuik only, nor can it displace Count IV with respect to the claims against Bordynuik.

As to the claims against JBI, Count IV alleges fraud on the part of both Defendants, and Count V alleges that JBI violated § 552, Restatement (Second) of Torts, which imposes liability on one who "supplies false information for the guidance of others in their business transactions." Restatement (Second) of Torts § 552 (1977). Count VI similarly alleges that JBI negligently misrepresented that the restrictive legend on Seneca's shares could not be removed until August 2010. As noted above, § 108.8401 imposes liability for failure or delay in registering a security but has nothing to do with any alleged fraud or misrepresentation committed by the issuer. These fraudulent-misrepresentation claims thus materially differ from the claims for negligence or breach of fiduciary duty that other courts have held displaced by UCC § 8-401. Accordingly, none of common-law claims in this matter are displaced by § 108.8401.

Defendants also argue that Seneca has failed to state a claim against Bordynuik for breach of fiduciary duty or negligence. ECF No. 13 at 12-13. To state a claim against Bordynuik in his capacity as an officer of JBI, Seneca must allege that "(a) [Bordynuik's] act or failure to act constituted a breach of his . . . fiduciary duties as a director or officer; and (b) The breach of those duties involved intentional misconduct, fraud or a knowing violation of law." Nev. Rev. Stat. § 78.138(7).

Rule 9(b), Fed. R. Civ. P., requires parties to plead "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Though Defendants assert that Seneca has failed to meet the heightened pleading standards of Rule 9(b), the Court disagrees. The Complaint alleges that, in response to a May 2010 request, Bordynuik falsely represented to Seneca that the restrictive legend could not be removed until August 2010 because JBI was a shell company and that because of these representations, Seneca suffered an economic loss from his inability to sell the stock. Seneca has therefore met the requirements of Rule 9(b). As the Eleventh Circuit has explained, "Rule 9(b) is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)). The allegations above satisfy all of these requirements.

Nor does *Reamco Dev. Corp. v. 499 Corp.*, 992 So. 2d 431 (Fla. 4th DCA 2008), change the analysis. In *Reamco*, the court affirmed summary judgment in favor of a title-insurance agency because the agency's representation that it believed that a forty-five day due-diligence period ran from the date of the most recent addendum to the contract and not from the original contract date was not false information but, rather, a mere opinion. *Id.* at 434. Here, however, we are not at the summary-judgment stage but, rather, are in the motion-to-dismiss stage in which the Court must

accept all non-conclusory allegations as true, including allegations of fraudulent misrepresentation on the part of Defendants supported by specific factual allegations. *Hughes*, 350 F.3d at 1159-60.

Defendants also assert that Seneca fails to show "justifiable reliance" necessary for his claims of fraudulent or negligent misrepresentation. *See Albert H. Wohlers & Co. v. Bartgis*, 969 P.2d 949, 957-58 (Nev. 1998) ("fraud must be proven by clear and convincing evidence as to each of the following elements . . . (4) plaintiff's justifiable reliance upon [defendant's] misrepresentation"). Defendants argue that Seneca's reliance was not justifiable because the Complaint suggests that Seneca did not believe the representations to be true based on JBI's SEC filings. ECF No. 13 at 16. But while it is true that the Complaint references filings that were made public prior to Seneca's request to remove the restrictive legend, nothing in the Complaint indicates that Seneca was aware of these filings at the time that he made the requests.

Finally, Defendants argue that Count V under § 552, Restatement (Second) of Torts, should be stricken as redundant. ECF No. 13 at 14 n.4. Rule 12(f), Fed. R. Civ. P., allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Because Nevada generally has adopted the Restatement in developing its common law governing deceit torts . . . Nevada would recognize the tort of negligent misrepresentation . . . as outlined in the Restatement (Second) of Torts." *In re Agribiotech, Inc.*, 291 F. Supp. 2d 1186, 1191 (D. Nev. 2003) (analyzing Nevada-law negligent-representation-by-nondisclosure claim under § 552, Restatement (Second) of Torts). Thus, Seneca's claim against JBI under § 552 is duplicative of Count VI for common-law negligent misrepresentation against JBI

because Count VI is also governed by § 552. Accordingly, Count V is redundant and should be stricken.

### IV. Breach-of-Contract and Civil-Conspiracy Claims (Counts VII, VIII)

Defendants argue that, under the *in pari delicto* defense, Seneca is barred from bringing his claim that Defendants breached the Unit Purchase and Exchange Agreement by failing to timely submit all SEC filings. ECF No. 13 at 17-18. But "the existence of an affirmative defense will not support a motion to dismiss. . . . [unless the complaint's] own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), *on reh'g*, 764 F.2d 1400 (11th Cir. 1985). Defendants allege that Seneca failed to disclose to JBI the potential unenforceability of at least one of the patents purchased by JBI in the Unit Purchase and Exchange Agreement. But the Complaint alleges nothing about the patents that JBI purchased through the Agreement, so this defense does not appear on the face of the Complaint.

And, significantly, "the *in pari delicto* defense is available 'only where (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public.'" *Pinter v. Dahl*, 486 U.S. 622, 633 (1988) (quoting *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310-11 (1985)). Though Defendants suggest that they were wronged by Seneca's failure to disclose the potential unenforceability of the patent, they do not allege that the failure to remove the restrictive legend from the stock or the drop in the JBI stock price—the wrongs that Seneca seeks to

redress—resulted from Seneca's failure to disclose. Thus, Defendants have not shown that "as a direct result of his own actions, [Seneca] bears at least substantially equal responsibility for the violations he seeks to redress." *Id.* Defendants' motion to dismiss the breach-of-contract claim is therefore denied.

Finally, Defendants argue that Seneca fails to state a claim for civil conspiracy because Seneca has failed to sufficiently state any other claim in his Complaint. *See Eikelberger v. Tolotti*, 611 P.2d 1086, 1089 n.1 (Nev. 1980) ("The cause of action [for civil conspiracy] is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff."). But the Court here dismisses only two of the counts from Seneca's eight-count Complaint. Accordingly, no basis exists to dismiss the civil-conspiracy claim for failure to state any other claim.

### *CONCLUSION*

For the foregoing reasons, it is **ORDERED and ADJUDGED** that Defendants' Motion to Dismiss Plaintiff's Complaint [ECF No. 13] is **GRANTED in PART**. Count I of Plaintiff's Complaint is **DISMISSED**. Count V of Plaintiff's Complaint is **STRICKEN.**

**DONE and ORDERED** in Fort Lauderdale, Florida, this 14th day of May 2014.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of record